3588 JJF/JPS HD387

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

VICTOR MONTAGNE,           )
                                    )
            Plaintiff,           )
                                    )    No.    08 C 611
v.                                )
                                    )    Judge Darrah
THE HOME DEPOT, INC.      )
                                    )    Magistrate Judge Nolan
            Defendant.      )

## RESPONSE OF THE DEFENDANT, HOME DEPOT U.S.A., INC., TO PLAINTIFF'S PETITION TO REMAND

NOW COMES the defendant, HOME DEPOT U.S.A., INC., incorrectly sued as "THE HOME DEPOT, INC.," by its attorneys, PURCELL & WARDROPE CHTD., and hereby objects to Plaintiff's Petition to Remand for the reasons stated herein.

1.      On September 27, 2007, the plaintiff, VICTOR MONTAGNE ("Plaintiff"), commenced a civil action in the Circuit Court of Cook County, Illinois, County Department – Law Division, Case No. 07 L 010189, against HOME DEPOT U.S.A., INC., incorrectly sued as "THE HOME DEPOT, INC." ("Defendant").[1]

2.      Plaintiff alleged that on April 4, 2006, he was struck by a wood plank that fell from a rack or pallet while a Home Depot employee was retrieving sale product for Plaintiff.[2]

3.      The Complaint at Law failed to state sufficient facts to determine whether the case was subject to Removal, as there was no indication therein regarding diversity of the parties

---

[1] See, Complaint at Law, attached hereto and incorporated herein by reference as Exhibit "A."
[2] Id.

or that the amount in controversy exceeded seventy-five thousand and 00/100 dollars ($75,000.00).[3]

4.    On January 23, 2008, Defendant received Plaintiff's Response to Requests to Admit Facts, by which Plaintiff attested to facts demonstrative of complete diversity and that the amount in controversy between the named parties, inclusive of claims for future damages, is in excess of seventy-five thousand and 00/100 dollars ($75,000.00).[4]

5.    Defendant immediately prepared and thereafter filed its Notice of Removal on January 28, 2008.[5]

6.    Plaintiff first sought leave to amend his Complaint at Law in the Circuit Court of Cook County, Illinois the following day.  However, as the Notice of Removal had already been filed, Plaintiff's attempts to change his pleadings were moot.

7.    After Removal, Plaintiff sought to amend his Complaint at Law before this Honorable Court to name Defendant's employee as a "John Doe" defendant.

8.    Defendant contested the amendment as a clear and unwarranted attempt to set the grounds to attack diversity jurisdiction and effect a Remand of this case.

9.    Plaintiff denied that such was his motive, but upon being granted leave by this Honorable Court to amend his Complaint at Law, Plaintiff's first act was the Petition to Remand to which this response is directed.

10.    The Petition to Remand provides proof that Plaintiff's motivation is to deprive Defendant of its right of Removal rather than any real need to recover from an additional and necessary defendant.

---

[3] Id.
[4] See, Response to Requests to Admit Facts and Notice of Filing, receipt date stamped, January 23, 2008, attached hereto and incorporated herein by reference as Exhibit "B."
[5] See, Notice of Removal, attached hereto and incorporated herein by reference as Exhibit "C."

11.    This matter has not yet been before this Honorable Court for an initial scheduling conference.

12.    Plaintiff has not engaged Defendant in a discovery conference. Thus there has not yet been an exchange of F.R.C.P. 26(a) disclosures. In fact, Plaintiff has not even asked for information about "John Doe."

13.    As such, Plaintiff has no information regarding the residency of "John Doe" and no basis for his assertion that the unknown individual is "an Illinois resident" as stated in Plaintiff's Petition to Remand.

14.    Moreover, Plaintiff's constant insinuations that Defendant somehow acted with impropriety by removing this case because Plaintiff intended to amend his Complaint at Law is disingenuous at best. Plaintiff responded to the Requests to Admit which clearly contemplated determining whether Removal was appropriate. Moreover, Plaintiff's proposed amendment to name a "John Doe" defendant in the Circuit Court of Cook County, State of Illinois, was not permissible under the controlling law.

15.    Filing a complaint against unnamed defendants is procedurally unacceptable under the Illinois Rules of Civil Procedure, and the hypothetical pleading Plaintiff says he would have filed in the Circuit Court of Cook County would have been subject to dismissal as a matter of law.

16.    Under the law that would apply to all claims filed in the Circuit Court of Cook County, Illinois, all parties to an action must be identified by name. 735 ILCS 5/2-401(c). The use of pseudonyms to identify a party is disfavored. *A.P. v. M.E.E.*, 354 Ill.App.3d 989, 821 N.E.2d 1238, 1252 (2004).[6] If a party wishes to proceed under a fictitious name, that party must

---

[6] See, Courtesy copy of *A.P. v. M.E.E.*, 354 Ill.App.3d 989, 821 N.E.2d 1238, 1252 (2004), attached hereto and incorporated herein by reference as Exhibit "D."

obtain leave of court and demonstrate good cause to do so. 735 ILCS 5/2-401(e). The Court

must then determine whether the moving party has demonstrated exceptional circumstances to

warrant proceeding under a fictitious name. *A.P.*, 354 Ill.App.3d at 1002, 821 N.E.2d at 1252.

Generally fictitious names are only proper when necessary to protect the privacy of children,

rape victims, and other particularly vulnerable parties or witnesses. *Id.* The use of fictitious

names is not a refuge for the plaintiff who has not sufficiently investigated her claim before

filing a complaint. The Supreme Court of Illinois held that a fictitious "John Doe" may not be

considered a named defendant. *Bogseth v. Emmanuel/ Neufville v. Diamond*, 166 Ill.2d 507, 655

N.E.2d 888, 211 Ill.Dec. 505 (1995).[7] The Court noted in reaching its decision that "Illinois

courts have historically and uniformly held that suits brought against fictitious parties are void *ab*

*initio*" and that a proceeding against a party by a fictitious name is a nullity. *Bogseth*, 166 Ill.2d

at 513-4, 655 N.E.2d 891-2, citing, *Ohio Millers Mutual Insurance Co. v. Inter-insurance*

*Exchange of the Illinois Autmobile Club*, 367 Ill. 44 (1937). The tenet underlying this

prohibition is that a court only entertains subject matter jurisdiction over an actual plaintiff and

an actual defendant. *Bogseth*, 166 Ill.2d at 514, 655 N.E.2d 892.

17.    Therefore, Plaintiff's protestations that Removal was filed when he announced his

intent to proceed against "John Doe" are chronologically inaccurate, meaningless and insincere.

18.    Finally, Plaintiff's action against the unidentified employee will be time barred if

this matter is remanded to in the Circuit Court of Cook County, Illinois. Actions for personal

injury are subject to a two year statute of limitations. 735 ILCS 5/13-202. Therefore, a viable

claim against an actual defendant (as opposed to the proposed invalid claim against "John Doe")

was required to have been filed no later than April 4, 2008. As noted above, despite Plaintiff's

---

[7] See, *Bogseth v. Emmanuel/ Neufville v. Diamond*, 166 Ill.2d 507, 655 N.E.2d 888 (1995), attached hereto and incorporated herein by reference as Exhibit "E."

4

protests that "John Doe" is a necessary party, Plaintiff has done nothing to identify John Doe, and the statute of limitations has now expired as to that individual.

19.    Therefore, no cause of action can be asserted against Defendant's employee in the Circuit Court of Cook County, Illinois and this case would be subject immediately to a Second Notice of Removal after the state court judge were to rule that there no longer was a viable cause against the individual.

20.    In summary: (1.) Plaintiff's Petition to Remand is designed to effectuate improper motives (depriving Defendant of its right of Removal); (2.) is premature (Plaintiff has no information that "John Doe" actually effects diversity); and (3.) would be ultimately ineffective as no cause of action will continue against "John Doe" upon remand and this case would be subject to an immediate second Removal once the pleading as to the employee was dismissed.

WHEREFORE, for the reasons stated above, Defendant requests this Honorable Court to deny Plaintiff's Petition to Remand.

Respectfully submitted,


By:    _s/ Jason J. Friedl_____


**PURCELL & WARDROPE, CHTD.**
10 S. LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
F:\Jjf\3588 Montagne\Motions\Response to Pltffs Petition to Remand.doc

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT-LAW DIVISION**

| | | |
|---|---|---|
| VICTOR MONTAGNE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | |
| THE HOME DEPOT, INC. | ) | |
| | ) | **2007L010189** |
| Defendant. | ) | **CALENDAR/ROOM D** |

**TIME 00:00**
**Premises Liability**

*FILED 07 SEP 27 AM 11:23 DOROTHY BROWN CLERK OF CIRCUIT COURT LAW DIVISION*

## COMPLAINT AT LAW

NOW COMES Plaintiff, VICTOR MONTAGNE, by his attorneys,

BAAL & O'CONNOR, and for his complaint against Defendant, THE HOME DEPOT,

INC., states as follows:

1.    Defendant, THE HOME DEPOT, INC., is a corporation doing business in

Cook County, Illinois.

2.    Defendant owns, controls, maintains, and operates a department store at

1232 W. North Avenue, Chicago, Illinois.

3.    On or about April 4, 2006, Plaintiff was a business invitee of the

Defendant and was lawfully shopping at Defendant's store, in the course and scope of his

employment with Schaefges Bros. Inc.

4.    Defendant owed Plaintiff a duty to use ordinary care to maintain its

premises in a reasonably safe condition, and to conduct its business activities in a

reasonably safe manner.

5.    On or about April 4, 2006 Plaintiff was standing in a store aisle near one

of Defendant's employees, who was retrieving some masonite boards for Plaintiff.



EXHIBIT
A

6.    At that time and place, Defendant's employee caused a wood plank to fall from the rack or pallet, striking Plaintiff in the face and head, causing serious injuries.

7.    At that time and place, Defendant also created or permitted a condition which presented an unreasonable risk of harm to Plaintiff, specifically a loose plank which could be upset or jostled by one of Defendant's employees, and thus fall upon a customer, such as Plaintiff.

8.    Defendant, by its agents and employees, committed one or more of the following negligent acts or omissions:

(a)    Caused a plank or board to fall from atop a display, rack or pallet, striking Plaintiff;

(b)    Failed to inspect the display, rack or pallet before attempting to remove masonite boards, or otherwise failed to exercise due care when removing these boards while Plaintiff was standing in the area;

(c)    Failed to maintain safe display aisles for Plaintiff, a customer of Defendant;

(d)    Negligently stacked wood in a negligent manner and in an area where they were likely to drop;

(e)    Failed to place warning signs in proper positions or otherwise adequately warn the Plaintiff of these hazardous conditions;

(f)    Violated company policy by allowing a hazardous condition to exist in the store, endangering customers such as Plaintiff.

9.    As a proximate result of one or more of these negligent acts or omissions by the Defendant, THE HOME DEPOT, INC., the Plaintiff, VICTOR MONTAGNE, was

severely and permanently injured, and suffered economic and non-economic damages.

WHEREFORE, the Plaintiff, VICTOR MONTAGNE, requests entry of judgment against the Defendant, THE HOME DEPOT, INC., in an amount which a Court and Jury consider fair and reasonable, but in excess of $50,000 plus costs.

BRYAN J. O'CONNOR
One Of Plaintiff's Attorneys

#13773
**BAAL & O'CONNOR**
221 N. LaSalle Street
26th Floor
Chicago, IL 60601
(312) 236-1814

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-LAW DIVISION

FILED-4
08 JAN 18 PM 2:21
CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
LAW DIVISION
DOROTHY BROWN

VICTOR MONTAGNE )
)
Plaintiff, )
)
vs. )
) Case No.: 07 L 00189
)
THE HOME DEPOT, INC. )
)
Defendant. )

**NOTICE OF FILING**

TO:    Jason J. Friedl
       Purcell & Wardrope, Chtd.
       10 South LaSalle Street
       Suite 1200
       Chicago, IL 60603

       PLEASE TAKE NOTICE that on the 18th day of January, 2008 the attached
Plaintiff's Response to Request to Admit Facts was served on the above party.

                                    _Baal E. O'Connor_
                                    BAAL & O'CONNOR
                                    221 N. LaSalle Street, Suite 2600
                                    Chicago, IL 60601
                                    (312) 236-1814

**PROOF OF SERVICE**

       The undersigned, being first duly sworn on oath, deposes and states that copies of the above were
deposited in the U.S. Mail Chute located at 221 N. LaSalle Street, Chicago, Illinois, in a properly stamped and
addressed envelope to the above named on this 18th day of January, 2008.

                                    _Linda Beaux_

Subscribed and sworn to before me
this 19th day of January, 2008.
_Joan Mansch_
Notary Public

OFFICIAL SEAL
JOAN MANSCH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/04/09



EXHIBIT
B

JAN 2 3 2008

FILED-4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-LAW DIVISION

06 JAN 18 PM 2:21

CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
LAW DIVISION

VICTOR MONTAGNE                  )
                                 )
            Plaintiff,           )
                                 )        DOROTHY BROWN   CLERK
vs.                              )
                                 )        Case No.:  07 L 10189
THE HOME DEPOT, INC.             )
                                 )
            Defendant.           )

## RESPONSE TO REQUST TO ADMIT FACTS

Plaintiff, VICTOR MONTAGNE, by his attorneys, BAAL & O'CONNOR,

Submits his Response to Defendant, THE HOME DEPOT, INC., Request to Admit Facts as

follows:

1.      The amount of any controversy in this case, including any and all claims of

future damages, is in excess of seventy-five thousand dollars ($75,000), exclusive of any

interest and/or costs.

**Response:** Yes


2.      The time of filing his Complaint at Law on September 27, 2007, the plaintiff,

VICTOR MONTAGNE, was a resident of the state of Illinois.

**Response:** Yes

3.      The time of filing his Complaint at Law on September 27, 2007, the plaintiff,

VICTOR MONTAGNE, was not a resident of the State of Delaware or of the State of Georgia.

**Response:** No

4.      Pursuant to Supreme Court Rule 126, the above facts will be admitted unless,

within said twenty-eight (28) days, the plaintiff files and/or serves a sworn denial, or written

objections of the ground that the requested admissions are privilege, irrelevant, or otherwise improper.

Response:

Victor Montagne

Subscribed to before me this
17th day of January 2008.

Notary Public

OFFICIAL SEAL
LINDA BIALEK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/06/10

**FILED**

**JANUARY 28, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

3588 JJF/JPS HD387

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

# 08 C 611

VICTOR MONTAGNE,                    )
                                    )
    Plaintiff,                    )
                                    )
v.                                  )
                                    )
THE HOME DEPOT, INC.                )
                                    )
    Defendant                     )

**JUDGE DARRAH**
**MAGISTRATE JUDGE NOLAN**

### NOTICE OF REMOVAL OF CAUSE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

NOW COMES the Defendant, HOME DEPOT USA, INC., by its attorneys, PURCELL & WARDROPE, CHTD., and pursuant to 28 U.S.C.A. §1332, 1441 and 1446, hereby provides notice of its removal of this cause pursuant to said statutes and for the following reasons:

1.    On or about September 27, 2007, there was commenced and is now pending in the Circuit Court of Cook County, Illinois, County Department – Law Division, a certain civil action under case #07 L 010189, in which Victor Montagne is the plaintiff ("Plaintiff") and Home Depot USA, Inc., is the sole defendant ("Defendant").[1]

2.    The aforementioned lawsuit is brought by the Plaintiff seeking damages for personal injuries under a premises liability negligence theory. The Complaint at Law does pray for damages in excess of $50,000.[2]

3.    The Plaintiff's Complaint alleges that the Plaintiff was struck in the face and head by a wood plank causing injury to his person, for which injury he alleges that he sustained permanent injury and suffered economic and non-economic damages.[3]

---

[1] See, Complaint at Law, attached hereto and incorporated herein by reference as Exhibit "A."
[2] Id.


EXHIBIT

4.     The Complaint at Law fails to state sufficient facts upon which the case could be removed, as there is no indication therein regarding diversity or that the amount in controversy exceeds $75,000.[4]

5.     On January 23, 2008, Defendant received Plaintiff's Response to Requests to Admit Facts, by which Plaintiff attests to facts demonstrative of complete diversity and that amount in controversy, inclusive of claims for future damages is in excess of seventy-five thousand and 00/100 dollars ($75,000.00).[5]  Prior to this response, Defendant was not aware of the nature and extent of the Plaintiff's claimed damages, nor of his residence at the time of filing his complaint.   Based on the foregoing, the undersigned counsel for the Defendant has a reasonable belief that the amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

6.     Defendant states that the above lawsuit currently involves a controversy with complete diversity of citizenship between citizens of different states, and Defendant affirmatively states further:

(a)     Per Plaintiff's Response to Requests to Admit Facts, the Plaintiff was at the commencement of this action a resident of the State of Illinois and is not a resident of the State of Delaware or of the State of Georgia;[6]

(b)     Defendant is a corporation duly created and organized by and under the laws of the State of Delaware with its principal place of business in the State of Georgia, and was not and is not a corporation created or organized under the laws of the State of Illinois, nor does it have principal places of business in the State of Illinois.

7.     This matter involves a controversy between individuals who are residents of the State of Illinois on the one hand, and a corporation incorporated or organized pursuant to the

---

[3] Id.
[4] Id.
[5] See, Response to Requests to Admit Facts and Notice of Filing, receipt date stamped, January 23, 2008, attached hereto and incorporated herein by reference as Exhibit "B."
[6] Id.

laws of a state other than Illinois, and who has its principal place of business in a state other than

Illinois, on the other hand. Further, the amount in controversy involves more than Seventy Five

Thousand Dollars ($75,000), exclusive of interest and costs. Accordingly, the District Court for

the United States has original jurisdiction over this lawsuit.

8.     The Defendants' Notice of Removal is timely filed on January 28, 2008 as notice

of the amount in controversy and confirmation of complete diversity was obtained on January

23, 2008.[7]

9.     Attached to and made a part of this Notice of Removal is a copy of the Plaintiff's

Complaint at Law. Further, the following documents known to Defendant have been filed in the

Circuit Court of Cook County, Illinois, County Department -- Law Division action under case

#07 L 010189:

-     The Summons directed to Defendant;

-     Defendant's Appearance and Jury Demand; Motion for Leave to File
      Appearance, Notice of Motion re: same; Answer, Affirmative Defenses
      and Discovery; Notice of Filing same; and Order granting leave for same;

-     Defendant's Answer and Affirmative Defenses, Proof of Service re:
      discovery, and Notice of Filing Same;

-     Defendant's written discovery propounded upon Plaintiff, inclusive of
      Supreme Court Rule 213 Interrogatories to Plaintiff, Supreme Court Rule
      213(f) Interrogatories to Plaintiff, Demand for Production Pursuant to
      Supreme Court Rule 237 and 213 (e) to Plaintiff, Supreme Court Rule 214
      Request to Produce to Plaintiff Request to Admit Facts Directed to
      Plaintiff and Notice of Filing same.

To Defendant's knowledge, no other documents or pleadings were filed in said lawsuit.

10.    Notice of the filing of the Defendant's Notice of Removal was given to all parties

as required by law. A true and correct copy of the Notice of Removal was filed with the Clerk of

---

[7] Id.

3

the Circuit Court of Cook County, Illinois, County Department – Law Division, as provided by law.

11.     With its Appearance filed in the Circuit Court of Cook County, Illinois, County Department – Law Division, Defendant demanded and paid the additional fee for jury demand. Defendant herein on removal also demands this case be tried by a jury.

WHEREFORE, the Defendant, HOME DEPOT USA, INC., prays that it may affect removal of the within action from the Circuit Court of the Twelfth Judicial Circuit for St. Claire County, Illinois, to the United States District Court for the Southern District of Illinois, and that the matter be tried before a jury.

Respectfully submitted,


By:     /s/Jason J. Friedl


PURCELL & WARDROPE CHTD
10 South LaSalle Street
Suite 1200
Chicago, IL 60603
(312) 427-3900
F:\JJ\3588 Montagne\Pleadings - Fed\NtcRemoval.doc

4

Westlaw.

821 N.E.2d 1238
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)

Page 1

**C**
A.P. v. M.E.E.
Ill.App. 1 Dist.,2004.

Appellate Court of Illinois,First District, Sixth Division.
A.P., D.P., J.P., J.P., L.P., K.P., R.P., R.P., and R.P., Indiv. and as Parents and Next Friends of Their Minor Children and Adult Children, Plaintiffs-Appellees,
v.
M.E.E., T.J.P., N.J.P., P.S.P., G.M., Diversified Financial Management Corporation, and U.S. Financial Advisors, Inc., Defendants-Appellees (The Tribune Company, Intervenor-Appellant).
M.E.E., T.J.P., and A.R.W., as Trustees, Petitioners-Appellees,
v.
Minor Beneficiaries, and Unborn Beneficiaries, Respondents-Appellees (The Tribune Company, Intervenor-Appellant).
**Nos. 1-04-0994, 1-04-0995.**

Dec. 30, 2004.

**Background:** Trustees of multiple family trusts filed petition for declaratory relief, seeking, in accordance with Probate Act, entry of order declaring that confidential settlement agreement that had been entered into by various members of family was in best interests of minor and unborn beneficiaries. Thereafter, trial court granted parties' agreed to protective order, requiring all pleadings, documents, and other writings concerning case to be filed under seal. Certain adult beneficiary signatories to agreement and their adult children filed motion to intervene, which motion was granted. Subsequently, certain adult and minor trust beneficiaries filed complaint solely to prevent passage of time from barring their claims against trustees and others, but with expectation that those claims would be extinguished by court's approval of agreement in case involving trustees' petition for declaratory relief. An agreed order was subsequently entered vol-

untarily dismissing second case. Newspaper filed petitions to intervene in both cases and motions to unseal court files. Newspapers' motions to intervene were granted as matter of right for limited purpose of petitioning court to unseal court files. Newspaper filed motion for leave to file its briefs publicly and for copies of briefs and court orders concerning sealing court files. The Circuit Court, Cook County, John K. Madden, J., orally denied the former motion, and then issued subsequent order denying newspaper's motion to unseal court files. Newspaper appealed both orders.

**Holdings:** The Appellate Court, Fitzgerald Smith, J., held that:
(1) trial court abused its discretion in sealing entire court file;
(2) presumption of right of public access to documents that had been filed applied to proceeding; and
(3) presumption of right of public access to documents that had been filed had not been rebutted with respect to sealing of entire court file.

Reversed and remanded with directions.

West Headnotes

**[1] Records 326 ⟵⟶32**

326 Records
    326II Public Access
        326II(A) In General
            326k32 k. Court Records. Most Cited Cases
Order denying newspaper's motions to unseal court files pertaining to confidential settlement agreement that had been entered into by certain family members was in nature of injunctive relief, and thus Appellate Court possessed necessary jurisdiction to entertain newspaper's interlocutory appeal of denial of its motions.

**[2] Records 326 ⟵⟶32**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



821 N.E.2d 1238                                                                                                              Page 2
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
**(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)**

326 Records
    326II Public Access
        326II(A) In General
            326k32 k. Court Records. Most Cited Cases
Newspaper's interlocutory appeal of trial court's oral order denying newspaper's motion to file public papers and to obtain copies of briefs and court orders concerning sealing file in case involving confidential family settlement agreement, and trial court's subsequent written order denying newspaper's motion to unseal court files in case, was timely, though newspaper had not filed its notice of appeal within 30 days of denial of oral order; oral order was directly related to denial of motion to unseal file, and thus trial court's oral ruling became final and appealable when related written order was entered denying newspaper's motion to unseal files.

**[3] Criminal Law 110 ☜══635**

110 Criminal Law
    110XX Trial
        110XX(B) Course and Conduct of Trial in General
            110k635 k. Publicity of Proceedings. Most Cited Cases

**Trial 388 ☜══20**

388 Trial
    388III Course and Conduct of Trial in General
        388k20 k. Publicity of Proceedings. Most Cited Cases
Judicial proceedings in the United States are open to the public, in criminal cases by constitutional command, and in civil cases by force of tradition.

**[4] Records 326 ☜══32**

326 Records
    326II Public Access
        326II(A) In General
            326k32 k. Court Records. Most Cited Cases
An order denying a motion to unseal a court file or

document is reviewed for an abuse of discretion, regardless of whether a purported right of access is based on the common law or the First Amendment. U.S.C.A. Const.Amend. 1.

**[5] Records 326 ☜══32**

326 Records
    326II Public Access
        326II(A) In General
            326k32 k. Court Records. Most Cited Cases
The common law right of access to court records is essential to the proper functioning of a democracy; it ensures the public's ability to monitor the functioning of their courts and to form educated and knowledgeable opinions about their judicial system.

**[6] Records 326 ☜══32**

326 Records
    326II Public Access
        326II(A) In General
            326k32 k. Court Records. Most Cited Cases
The common law right of public access to court records is not absolute; every court has supervisory power over its own records and files, and access may be denied where court files might become a vehicle for improper purposes.

**[7] Records 326 ☜══32**

326 Records
    326II Public Access
        326II(A) In General
            326k32 k. Court Records. Most Cited Cases
The common law right of public access to court files may not be evaded by the wholesale sealing of court files; the court must be sensitive to the rights of the public in determining whether any particular document or class of documents is appropriately filed under seal.

**[8] Constitutional Law 92 ☜══2089**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
**(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)**

92 Constitutional Law
   92XVIII Freedom of Speech, Expression, and Press
      92XVIII(V) Judicial Proceedings
         92XVIII(V)1 In General
            92k2089 k. Court Documents or Records. Most Cited Cases
   (Formerly 92k90.1(3))
The right of public access to court records embodied in the First Amendment presumes a right to inspect where: (1) court records have historically been open to the public, and (2) access would further the court proceeding at issue. U.S.C.A. Const.Amend. 1.

**[9] Records 326 ⟊32**

326 Records
   326II Public Access
      326II(A) In General
         326k32 k. Court Records. Most Cited Cases
The presumption of the right of the public to access court records can be rebutted by demonstrating that suppression is essential to preserve higher values and is narrowly tailored to serve that interest.

**[10] Records 326 ⟊32**

326 Records
   326II Public Access
      326II(A) In General
         326k32 k. Court Records. Most Cited Cases
The judge, as the primary representative of the public interest in the judicial process, should not rubber stamp a stipulation to seal a record.

**[11] Records 326 ⟊32**

326 Records
   326II Public Access
      326II(A) In General
         326k32 k. Court Records. Most Cited Cases
An order closing court records should both articulate the privacy interest involved and be accompanied by a statement of reasons specific enough that a reviewing court can determine whether the closure order was properly entered.

**[12] Records 326 ⟊32**

326 Records
   326II Public Access
      326II(A) In General
         326k32 k. Court Records. Most Cited Cases
Trial court abused its discretion in sealing all court files in declaratory judgment action involving confidential family settlement agreement, in which trustees of various family trusts had asked court to determine whether agreement was in best interests of minor and unborn beneficiaries; contents of files did not justify conclusion that release of any part of them would be highly detrimental to minor, family, or financial privacy interests, orders of trial court that had been issued in case in no way revealed any matter remotely confidential, and although subsequent course of proceedings might have involved documents that would reveal more detailed business plans or private financial information, not every document in record was continually and intimately linked to minors' privacy, confidential business plans, or private financial information.

**[13] Records 326 ⟊32**

326 Records
   326II Public Access
      326II(A) In General
         326k32 k. Court Records. Most Cited Cases
Orders of the court are public documents and should not be kept under seal; judicial opinions are not the litigants' property, but, rather, belong to the public, which underwrites the judicial system that produces them.

**[14] Records 326 ⟊32**

326 Records

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                                          Page 4
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)

326II Public Access
326II(A) In General
326k32 k. Court Records. Most Cited Cases
Pleadings, motions, and other papers filed with the court assume the presumption of public access.

**[15] Records 326 ☞32**

326 Records
326II Public Access
326II(A) In General
326k32 k. Court Records. Most Cited Cases
Because litigation is a public enterprise and consumes public resources, it follows that in all but the most extraordinary cases, such as weighty national security matters, complaints must be public.

**[16] Records 326 ☞32**

326 Records
326II Public Access
326II(A) In General
326k32 k. Court Records. Most Cited Cases
Allegations of a complaint are, by their very nature, likely to be critical in some fashion of the litigant named in the pleading, but such a basis of alleged harm is too commonplace to warrant sealing a pleading.

**[17] Records 326 ☞32**

326 Records
326II Public Access
326II(A) In General
326k32 k. Court Records. Most Cited Cases
The mere fact that a person may suffer embarrassment or damage to his reputation as a result of allegations in a pleading does not justify sealing a court file.

**[18] Records 326 ☞32**

326 Records

326II Public Access
326II(A) In General
326k32 k. Court Records. Most Cited Cases
It is possible as a practical matter to disclose information such as judicial determinations, the nature of the allegations and defenses contained in the pleadings, the identity of adult parties, matters of scheduling and appearances, and motions, briefs, and argument concerning legal issues like subject matter jurisdiction and public access to court files, without disclosing information that may legitimately be kept confidential.

**[19] Records 326 ☞32**

326 Records
326II Public Access
326II(A) In General
326k32 k. Court Records. Most Cited Cases
Presumption of right of public access to documents that had been filed in declaratory judgment action involving confidential family settlement agreement, in which trustees of various family trusts had asked court to determine whether agreement was in best interests of minor and unborn beneficiaries, applied to court proceeding at issue, in which entire court file had been sealed; Probate Act required trial court to act to protect minors' best interests, judicial determination regarding interests of minors concerned issues in which public had interest, and nature of proceeding was adversarial, in that trustees' declaratory judgment action forced minor and unborn beneficiaries to pursue their claims now. S.H.A. 755 ILCS 5/19-8.

**[20] Compromise and Settlement 89 ☞53.1**

89 Compromise and Settlement
89II Judicial Approval
89k53 Necessity for Approval
89k53.1 k. In General. Most Cited Cases
Courts of equity may authorize a compromise of a minor's litigation where the evidence shows that the compromise was proper and for the best interest of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                    Page 5
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
**(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)**

the minor; great care should be exercised by the court, the minor being a ward of the court and entitled to its tenderest considerations.

**[21] Compromise and Settlement 89 ☞53.1**

89 Compromise and Settlement
    89II Judicial Approval
        89k53 Necessity for Approval
           89k53.1 k. In General. Most Cited Cases
Determination of whether compromise is in best interest of minor must be made within atmosphere of adversarial process and within rules of procedure and evidence.

**[22] Compromise and Settlement 89 ☞56.1**

89 Compromise and Settlement
    89II Judicial Approval
        89k56 Factors, Standards and Considerations; Discretion Generally
           89k56.1 k. In General. Most Cited Cases
In determining whether compromise is in best interest of minor, court may review parties' positions, analyze their potential strengths and weaknesses, and estimate probabilities of liability and damage award.

**[23] Records 326 ☞32**

326 Records
    326II Public Access
        326II(A) In General
           326k32 k. Court Records. Most Cited Cases

**States 360 ☞32**

360 States
    360II Government and Officers
        360k24 Legislature
           360k32 k. Sessions and Meetings. Most Cited Cases
What happens in the halls of government is presumptively open to public scrutiny.

**[24] Records 326 ☞32**

326 Records
    326II Public Access
        326II(A) In General
           326k32 k. Court Records. Most Cited Cases

**Trial 388 ☞20**

388 Trial
    388III Course and Conduct of Trial in General
        388k20 k. Publicity of Proceedings. Most Cited Cases
Public scrutiny over the court system promotes community respect for the rule of law, provides a check on the activities of judges and litigants, and fosters more accurate fact finding.

**[25] Records 326 ☞32**

326 Records
    326II Public Access
        326II(A) In General
           326k32 k. Court Records. Most Cited Cases
Presumption of right of public access to documents that had been filed in declaratory judgment action involving family settlement agreement in which trustees of various family trusts had asked court to determine whether agreement was in best interests of minor and unborn beneficiaries, had not been rebutted with respect to sealing of entire court file; concerns of trustees and others affected by agreement might warrant sealing of particular documents, but their concerns did not justify extreme action of sealing entire court file where not every document therein implicated their concerns.

**[26] Records 326 ☞32**

326 Records
    326II Public Access
        326II(A) In General
           326k32 k. Court Records. Most Cited Cases
Courts consider the issue of public access to a document or class of documents separate and apart

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                    Page 6
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
**(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)**

from public access to the court proceeding.

**[27] Constitutional Law 92 ☞1570**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)3 Particular Issues and Applications in General
                92k1570 k. Government Records. Most Cited Cases
        (Formerly 92k90.1(1))
To find that a document is subject to a First Amendment right of access, the court must consider whether the document has historically been available to the public and whether public access would promote the proper functioning of the government agency producing or considering the document. U.S.C.A. Const.Amend. 1.

**[28] Records 326 ☞32**

326 Records
    326II Public Access
        326II(A) In General
            326k32 k. Court Records. Most Cited Cases
Where there are legitimate concerns of confidentiality, the burden should shift to the parties to itemize for the court's approval which documents have been introduced into the public court record.

**[29] Witnesses 410 ☞223**

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k223 k. Determination as to Admissibility. Most Cited Cases
In camera review is an appropriate procedure and is routinely used when a judicial decision concerns information claimed to be covered by some rule of confidentiality or privilege.

**[30] Witnesses 410 ☞223**

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k223 k. Determination as to Admissibility. Most Cited Cases
In camera review consists generally of two parts; first, the parties present a general outline of their respective positions supported by nonconfidential or nonprivileged evidence, and, then the parties identify the specific confidential or privileged evidence for in camera review.

**[31] Parties 287 ☞67**

287 Parties
    287V Designation and Description
        287k67 k. Wrong or Assumed Names. Most Cited Cases
The privilege of suing or defending under pseudonyms should not be assumed or granted automatically even if an opposing party does not object; the use of pseudonyms is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in courts. S.H.A. 735 ILCS 5/2-401(e).

**[32] Pleading 302 ☞46**

302 Pleading
    302II Declaration, Complaint, Petition, or Statement
        302k46 k. Names, Description, and Capacity of Parties. Most Cited Cases
Provision of Code of Civil Procedure, in providing that a party shall set forth in the body of his pleading the names of all parties for and against whom relief is sought, represents the principle that civil judicial proceedings are to be conducted in public. S.H.A. 735 ILCS 5/2-401(c).

**[33] Parties 287 ☞66**

287 Parties
    287V Designation and Description

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                                   Page 7
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)

287k66 k. Names of Individuals in General. Most Cited Cases

**Pleading 302 ⬅46**

302 Pleading
    302II Declaration, Complaint, Petition, or Statement
        302k46 k. Names, Description, and Capacity of Parties. Most Cited Cases
Identifying the parties to a proceeding is an important dimension of publicness; the public has a right to know who is utilizing the courts that its tax dollars support. S.H.A. 735 ILCS 5/2-401(c).

**\*\*1242 \*990 \*\*\*668** Kenneth E. Kraus, Jason M. Rosenthal, Schopf & Weiss LLP, Chicago, for Intervenor-Appellant.
John J. Jiganti, Guardian ad Litem for Unborn Beneficiaries, John G. Moore, Theodore A. Sinars, Leila T. Francis, Madden, Jiganti, Moore & Sinars LLP; Janice R. Forde, Guardian ad Litem for Minor Beneficiaries, Kevin M. Forde, Kevin M. Forde, Ltd., Chicago, for Respondents-Appellees.
William R. Quinlan, Michael T. Beirne, Brian J. Alesia, Jeanah Park, Quinlan & Carroll, William J. Harte, William J. Harte, Ltd., Richard J. Prendergast, Richard J. Prendergast, Ltd., Lowell E. Sachnoff, Michael D. Richman, Michael R. Lieber, Sachnoff & Weaver, Ltd., Chicago. for Petitioners-Appellees.
Justice FITZGERALD SMITH delivered the opinion of the court:
The Chicago Tribune (Tribune) appeals the denial of its motions to unseal documents and the court files in case Nos. 02 CH 16157 and 03 CH 13908, arguing the files are public under the common law, the Clerks of Courts Act (705 ILCS 105/16(6) (West 2002)), and the first amendment. **\*\*1243 \*\*\*669** The sealed case files involve the issue of whether certain minor and unborn children of the Pritzker family should be joined to a private, confidential settlement agreement already negotiated and signed by adult family members (the Family Agreement). The trial court allowed the parties to file their complaints under seal and later entered an

agreed protective order that maintained confidentiality of all documents filed with the court and required the parties to file all documents under seal. Subsequently, the Tribune was allowed to intervene for the limited purpose of challenging the sealing of the court files, but its motions to unseal were denied, precipitating this appeal.

[1] The order denying the Tribune's motions to unseal was in the nature of injunctive relief, and, therefore, this court possesses the **\*991** necessary jurisdiction to entertain the Tribune's interlocutory appeal. 188 Ill.2d R. 307(a)(1); *Skolnick v. Altheimer & Gray*, 191 Ill.2d 214, 221-22, 246 Ill.Dec. 324, 730 N.E.2d 4 (2000).

In this consolidated appeal, we reverse the trial court's orders sealing the court files, return the circuit court record to the trial court in its sealed condition, and remand the cause for further proceedings consistent with this opinion.

### I. BACKGROUND

In 2001, members of the Pritzker family entered the Family Agreement, which was designed to avoid litigation with respect to certain grievances and settle certain of the family's personal and financial affairs. The Family Agreement was not the product of litigation or any other public process.

In September 2002, petitioners M.E.E., T.J.P., and A.R.W., trustees of multiple Pritzker family trusts, filed a verified petition for declaratory relief, seeking, in accordance with section 19-8 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/19-8 (West 2002)), the entry of an order declaring that the Family Agreement was in the best interests of respondents, minor and unborn beneficiaries. The Family Agreement was not attached to the petition but would be provided to the court for *in camera* review and to any guardians *ad litem* appointed by the court after the entry of a protective order.

Petitioners simultaneously filed an emergency motion for leave to file the petition under seal, con-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                                                                                                                                      Page 8
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
**(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)**

tending it contained private, detailed information regarding the family trusts and business units, including specific plans and strategies for certain business units. Further, the petitioners contended that public disclosure of the terms of the petition would have an adverse effect on the family members and businesses, that public disclosure at this time might expose the parties' interests to significant harm, and that by sealing the record, confidential family business information would be protected from disclosure to the public at large. The trial court granted petitioners' motion, ordering that the petition and "all further pleadings in this matter shall be filed under seal pending further order" of the court. The trial court also granted the motion for appointment of guardians *ad litem* for the minor and unborn beneficiaries.

In November 2002, the trial court granted the parties' agreed protective order to, *inter alia,* (1): maintain confidentiality of all documents produced by petitioners to respondents, all briefs, memoranda or any writings filed with the court and any exhibits thereto, and all discovery materials and deposition transcripts; and (2) file under seal "all documents, discovery responses and deposition transcripts filed with the Court and any pleading or other paper."

**\*\*1244 \*992 \*\*\*670** In January 2003, the trial court granted the motion of the guardians *ad litem* to file their joint response to the petition and ordered that "[a]ll pleadings and documents shall be filed under seal until further order of the Court."

In June 2003, the court granted petitioners' motion to file an amended verified petition for declaratory relief, which sought to clarify issues raised in the original petition. According to the amended petition, the Family Agreement not only resolved disputes about the past administration of the trusts, but also established a new administrative structure, which was intended to minimize the possibility that disputes would arise again in the future and to avoid the risks and costs of public litigation. The trustees and adult beneficiaries determined that the resolution effected by the Family Agreement was in

the best interests of all trust beneficiaries, but noted that such determination might not be conclusive if the minor and unborn beneficiaries could, years hence, raise their own claims against the trustees. Although the minor and unborn beneficiaries lacked the legal capacity to join the Family Agreement on their own, they could be joined by court decree, which was what petitioners sought in the present suit. According to the amended petition, copies of the Family Agreement were provided to the court under seal and delivered to the guardians *ad litem.* The Family Agreement was incorporated in the amended petition by reference without being attached thereto; however, a schedule of the Family Agreement was attached to the amended petition as exhibit A.

In June 2003, certain adult beneficiary signatories to the Family Agreement and their adult children moved to intervene in case No. 02 CH 16157. The trial court subsequently granted that motion.

In August 2003, certain adult and minor trust beneficiaries filed a complaint (No. 03 CH 13908) solely to prevent the passage of time from barring their claims against defendants (trustees and others), but with the expectation that those claims would be extinguished by the court's approval of the Family Agreement in related case No. 02 CH 16157. Those plaintiffs filed an emergency motion for leave to file the complaint under seal so as not to undermine the purposes of the court's seal in No. 02 CH 16157. Plaintiffs argued that allowing the complaint to be filed under seal and sealing the record as long as the Family Agreement remained in effect would preserve the privacy and confidentiality of the Family Agreement and proceedings surrounding it, and preserve and protect both familial relationships and the interests of various family businesses. The trial court granted plaintiffs' motion to seal and ordered that the complaint and all further pleadings be filed under seal pending further order of the court. In February 2004, the court entered an agreed order voluntarily dismissing case No. 03 CH 13908 without prejudice.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                                  Page 9
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
**(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)**

**\*993** In February 2004, the Tribune filed petitions to intervene in both cases and motions to unseal the court files. The trial court granted the Tribune leave to intervene as a matter of right for the limited purpose of petitioning the court to unseal the court files. The trial court orally required the Tribune to file its briefs under seal and denied the Tribune's oral request for a copy of either the papers supporting the motion to seal the files or the orders sealing the entire files. The Tribune filed a motion for leave to file its briefs publicly and for copies of the briefs and court orders concerning sealing the files. The trial court orally denied that motion on March 9, 2004. After briefing and oral argument, the court issued on March 19, 2004, a memorandum opinion and order **\*\*1245 \*\*\*671** denying the Tribune's motion to unseal the court files. The Tribune appealed both the March 9 and March 19, 2004 orders.

## II. ANALYSIS

### A. Timeliness of Appeal

**[2]** Appellees contend the Tribune failed to timely appeal the trial court's March 9, 2004 oral order within 30 days where the Tribune filed its notice of interlocutory appeal April 14, 2004. Appellees argue the Tribune should not "bootstrap" the appeal of its motion to file public papers and for copies of the briefs and court orders concerning sealing of the files onto the "unrelated" motion to unseal the court files. We disagree. The March 9 oral ruling was directly related to the trial court's March 19, 2004 written order keeping the trial court files sealed. If the trial court unsealed the files on March 19, the March 9 ruling would have been overturned and the briefs and orders relating to the earlier sealing would have been made public. The March 9 oral ruling became final and appealable when the related March 19 order was entered denying the Tribune's motion to unseal the files. Thus, the Tribune timely appealed the trial court's March 9 and March 19,

2004 orders.

Moreover, as discussed below, we find that the trial court abused its discretion by requiring the Tribune to file its briefs, which challenged the seal, under seal; by sealing the court's original orders sealing the files; and by sealing the appellees' motions for leave to file all documents under seal.

### B. Unsealing of Court Files

### 1. Presumption of Public Access

**[3][4]** Judicial proceedings in the United States are open to the public-in criminal cases by constitutional command, and in civil cases by force of tradition. **\*994**Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 10, 106 S.Ct. 2735, 2741, 92 L.Ed.2d 1, 11 (1986); Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-99, 98 S.Ct. 1306, 1311-13, 55 L.Ed.2d 570, 579-80 (1978). Certain jurisdictions have recognized a constitutional right of access to civil court files and records. See, e.g., In re Continental Illinois Securities Litigation, 732 F.2d 1302, 1308 (7th Cir. 1984) (determining that the policy reasons for granting public access to criminal proceedings also applied to civil cases); Skolnick, 191 Ill.2d at 230-32, 246 Ill.Dec. 324, 730 N.E.2d 4 (noting parallel rights of access to court records embodied in common law and the first amendment). An order denying a motion to unseal a court file or document is reviewed for an abuse of discretion, regardless of whether a purported right of access is based on the common law or the first amendment. Skolnick, 191 Ill.2d at 231-33, 246 Ill.Dec. 324, 730 N.E.2d 4.

**[5][6][7]** The United States Supreme Court acknowledged the existence of a common law presumption that allows the public to " 'inspect and copy public records and documents, including judicial records and documents.' " Skolnick, 191 Ill.2d at 230, 246 Ill.Dec. 324, 730 N.E.2d 4, quoting Nixon, 435 U.S. at 597, 98 S.Ct. at 1312, 55 L.Ed.2d at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

579. The common law right of access to court records is essential to the proper functioning of a democracy; it ensures the public's ability to monitor the functioning of their courts and to form educated and knowledgeable opinions about their judicial system. *Skolnick,* 191 Ill.2d at 230, 246 Ill.Dec. 324, 730 N.E.2d 4. The legislature codified the public's right to review judicial records in section 16(6) of the Clerks of Courts Act, which provides:

"All records, dockets and books required by law to be kept by such clerks shall be **1246 ***672 deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks' offices and shall have the right to take memoranda and abstracts thereto." 705 ILCS 105/16(6) (West 2002).

*Skolnick,* 191 Ill.2d at 231, 246 Ill.Dec. 324, 730 N.E.2d 4. However, the common law right of access is not absolute; every court has supervisory power over its own records and files, and access may be denied where court files might become a vehicle for improper purposes. *Skolnick,* 191 Ill.2d at 231, 246 Ill.Dec. 324, 730 N.E.2d 4. The right to access, however, may not be evaded by the wholesale sealing of court files; the court must be sensitive to the rights of the public in determining whether any particular document or class of documents is appropriately filed under seal. *United States v. Corbitt,* 879 F.2d 224, 228 (7th Cir.1989).

[8][9] The parallel right of access to court records embodied in the first amendment to the United States Constitution presumes a right to inspect where (1) court records have historically been open to the *995 public and (2) access would further the court proceeding at issue. *Skolnick,* 191 Ill.2d at 232, 246 Ill.Dec. 324, 730 N.E.2d 4; see also *Press-Enterprise Co.,* 478 U.S. at 8, 106 S.Ct. at 2740, 92 L.Ed.2d at 10 (explaining the second prong of this test as "whether public access plays a significant positive role in the functioning of the particular

process in question"). The presumption of access can be rebutted by demonstrating that suppression "is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629, 638 (1984); *Skolnick,* 191 Ill.2d at 232-33, 246 Ill.Dec. 324, 730 N.E.2d 4.

Whether we proceed under the common law or constitutional standards, the documents in this case became part of the court file once the trial court granted leave to file the pleading. At that point, the presumption of a right of public access to the filed documents attached. *Skolnick,* 191 Ill.2d at 232, 246 Ill.Dec. 324, 730 N.E.2d 4.

### 2. Review of the Trial Court's Orders

[10] The record indicates that the trial court merely acquiesced with the parties' requests to file all their pleadings and documents under seal. The initial orders allowing the parties to file under seal do not contain specific findings supporting the seal and do not indicate that the trial court conducted an *in camera* review prior to issuing those orders. Similarly, the broad protective order, which was drafted by the parties and sealed all documents, pleadings and "other paper" filed with the court, is devoid of any reference to an *in camera* review or specific findings regarding confidentiality. The trial judge himself did not conclude that legitimate interests in confidentiality required every part of the file to be confidential-at least he did not explain why secrecy was vital. The parties agreed on a broad confidentiality order, and the trial judge went along without an independent discussion of the need for or propriety of restrictions on the public's access. See *Pepsico, Inc. v. Redmond,* 46 F.3d 29, 31 (7th Cir.1995). The judge, as the primary representative of the public interest in the judicial process, should not rubber stamp a stipulation to seal a record. *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.,* 178 F.3d 943, 945 (7th Cir.1999).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                                                    Page 11
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
**(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)**

The requests seeking the orders to seal were not ac-
companied by an affidavit to **1247 ***673 sup-
port the very general conclusory assertions that a
seal was necessary to protect confidential family
business information. Cf., In re Reporters Commit-
tee for Freedom of the Press, 773 F.2d 1325, 1326
(D.C.Cir.1985) (party supported request for a pro-
tective order with an affidavit describing in general
terms the negative effect disclosure would have on
its business and competitive position in
shipping,*996 and that it would be impractical to
go through documents individually during the dis-
covery process to determine whether they contained
any confidential information); May Centers, Inc., v.
S.G. Adams Printing & Stationery Co., 153
Ill.App.3d 1018, 1020, 106 Ill.Dec. 891, 506
N.E.2d 691 (1987) (shopping center offered testi-
mony to support the opinion it would sustain finan-
cial damages from disclosure of pretrial discovery
information regarding the nature of tenants' share of
expenses for maintaining common areas); In re Es-
tate of Hearst, 67 Cal.App.3d 777, 781, 136
Cal.Rptr. 821, 822-23 (1977) (newspaper clippings
reporting threats to lives of members of a wealthy
and well-known family supported request whereby
court could exercise its limited power to seal por-
tions of court records on a temporary basis). We re-
cognize that, in some instances, the content of a
document itself may constitute sufficient evidence
to justify a protective order. However, our review
of the sealed record establishes that specific busi-
ness plans and strategies, and private, detailed in-
formation regarding family trusts and businesses
are not contained within the pages of each and
every pleading, brief, document and paper filed
with the circuit court.

After the Tribune intervened to contest the seal of
the court files, the parties briefed the issue, and the
trial court heard oral argument. In a written order,
the trial court, without making specific findings,
justified sealing the court files as an appropriate use
of discretion to protect financial privacy and the
privacy of minors and families. The court stated
that excising the names of minors would not protect

them because their identities were otherwise ascer-
tainable. The trial court, however, did not address
the option of sealing portions of the record as op-
posed to all the files. Beyond the conclusory state-
ments that courts may exercise discretion to protect
family, minor and financial privacy, the trial court
failed to further specify the basis for its conclusions
or give findings tied to a document or class of doc-
uments to support the decision to seal the court
files. Cf., Dittrich v. Gibbs, 31 Media L. Rep. 1570,
2002 WL 32113762 (June 19, 2002) (Will County
circuit court conducted an in camera review of all
documents impounded in the court file; identified
the contents of the sealed envelopes; and determ-
ined whether the names and identifiers of individu-
als would be redacted, and whether a document, ex-
hibit or certain portions thereof would be unsealed
or redacted).

[11] A closure order should both articulate the pri-
vacy interest involved and be accompanied by a
statement of reasons "specific enough that a re-
viewing court can determine whether the closure
order was properly entered." Press-Enterprise Co.,
464 U.S. at 510, 104 S.Ct. at 824, 78 L.Ed.2d at
638. We agree with the trial court's general proposi-
tions *997 regarding financial, minor, and family
privacy, but without specific findings, we cannot
adequately review whether the blanket application
of those propositions justified sealing the court files
in this case. Adequate findings relieve the appellate
courts of having to grope through the record to de-
termine whether some combination of credible
evidentiary items could support some line of factual
and legal conclusions **1248 ***674 that would
support the trial court's ultimate decision.

[12][13] Our own review of the sealed record estab-
lishes that the trial court abused its discretion by
sealing the court files. The contents of the files do
not justify the conclusion that release of any part of
them would be highly detrimental to minor, family
or financial privacy interests. Certainly, orders of
the court are public documents and should not be
kept under seal. Judicial opinions are not the litig-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                                Page 12
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)

ants' property; they belong to the public, which underwrites the judicial system that produces them. *Pepsico, Inc.,* 46 F.3d at 31. Judges should accommodate the competing interests of any legitimate privacy concerns and public access by keeping the confidential matters themselves under seal and referring to them only indirectly in an opinion. Our review of the trial court's orders confirms that those orders in no way revealed any matter remotely confidential.

[14][15][16][17] Furthermore, pleadings are not protected like much of the information that surfaces during pretrial discovery. The pleadings, motions and other papers filed with the court assume the presumption of public access. *Skolnick,* 191 Ill.2d at 236, 246 Ill.Dec. 324, 730 N.E.2d 4. Because litigation is a public enterprise and consumes public resources, it follows that in all but the most extraordinary cases (like weighty national security matters) complaints must be public. *Skolnick,* 191 Ill.2d at 236-37, 246 Ill.Dec. 324, 730 N.E.2d 4. Allegations of a complaint are, by their very nature, likely to be critical in some fashion of the litigant named in the pleading, but such a basis of alleged harm is too commonplace to warrant sealing a pleading. *Skolnick,* 191 Ill.2d at 235, 246 Ill.Dec. 324, 730 N.E.2d 4. The mere fact that a person may suffer embarrassment or damage to his reputation as a result of allegations in a pleading does not justify sealing a court file. *Skolnick,* 191 Ill.2d at 234, 246 Ill.Dec. 324, 730 N.E.2d 4. See also *In re Krynicki,* 983 F.2d 74, 78 (7th Cir.1992) (media interest in the events underlying the litigation was neither unusual nor deplorable, and judicial proceedings were not closed whenever the details were titillating, and open only when the facts were so boring that no one other than the parties cared about them).

[18] The initial petition that invoked the trial court's jurisdiction did name the minor and adult beneficiaries but did not reveal any detailed business plans or private financial information. Although the subsequent course of the proceedings may have involved documents or reports that did reveal more detailed business plans or private *998 financial information, not every document contained in the record (which is not voluminous) was continually and intimately linked to minors' privacy, confidential business plans, or private financial information. Thus, it is possible as a practical matter to disclose information such as judicial determinations, the nature of the allegations and defenses contained in the pleadings, the identity of adult parties, matters of scheduling and appearances, and motions, briefs and argument concerning legal issues like subject matter jurisdiction and public access to court files, without disclosing information that may legitimately be kept confidential. See *In re Krynicki,* 983 F.2d at 77 (in rejecting a wealthy entrepreneur's request to seal a brief based on his concerns for family and financial privacy and the safety of his children, the court noted that he did not specify what additional information lurked in the sealed transcripts). We conclude that the trial court abused its discretion in sealing the entire court files in this matter.

**1249 ***675 3. Presumption of Access to Court
Proceedings Involving Minors and Settlement

Appellees argue that the presumption of access does not apply to these proceedings, asserting that the issue here is unique to its facts and circumstances. Appellees state that this proceeding merely asks the court to determine whether a private settlement agreement is in the best interests of the minor and unborn beneficiaries; the court is not asked to adjudicate a dispute or interpret or reform documents.

[19][20][21][22] Appellees fail to convince us that the presumption of access does not apply to the trial court proceedings at issue here. Section 19-8 of the Probate Act provides:
    "By leave of court * * * a representative may compound or compromise any claim or any interest of the ward * * * in any personal estate * * * upon such terms as the court directs." 755 ILCS

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5/19-8 (West 2002).

Courts of equity may authorize a compromise of a minor's litigation where the evidence shows that the compromise was proper and for the best interest of the minor. *Wolf v. Uhlemann,* 325 Ill. 165, 185, 156 N.E. 334 (1927). Great care should be exercised by the court, the minor being a ward of the court and entitled to its tenderest considerations. *Matthews v. Doner,* 292 Ill. 592, 595, 127 N.E. 137 (1920). The best interest determination must be made within the atmosphere of an adversarial process and within the rules of procedure and evidence. *Ott v. Little Co. of Mary Hospital,* 273 Ill.App.3d 563, 573, 210 Ill.Dec. 75, 652 N.E.2d 1051 (1995). In making that determination, the court may review the parties' positions, analyze their potential strengths and weaknesses and estimate probabilities of liability and damage award. *Ott,* 273 Ill.App.3d at 573, 210 Ill.Dec. 75, 652 N.E.2d 1051.

[23][24] *999 The statute requires the government, through a judge, to act in this situation to protect the minors' best interests. What happens in the halls of government is presumptively open to public scrutiny. *In re Krynicki,* 983 F.2d at 75. Declaratory judgment actions, proceedings under the Probate Act, and judicial determinations regarding minors' best interests concern issues in which the public has an interest, but the public cannot monitor judicial performance adequately if entire court files of such proceedings are kept secret. Public scrutiny over the court system promotes community respect for the rule of law, provides a check on the activities of judges and litigants, and fosters more accurate fact finding. *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir. 1994).

Appellees contend that this is not an adversarial lawsuit, but that assertion is not entirely accurate. The trustees' declaratory judgment action forces the minor and unborn beneficiaries to pursue their claims now. The trustees essentially seek a declaration that their past conduct in administering the trusts and their more recent decision to enter into and implement the Family Agreement cannot be

subject to later litigation by the minor and unborn beneficiaries. Furthermore, section 19-8 of the Probate Act did not "thrust" the minor and unborn beneficiaries into the public court system. The parties determined the terms of their private settlement agreement, and the trustees apparently were not content to settle potential claims with the adult signatories of the Family Agreement without a release with respect to any claims the minors and unborns might have based on the trustees' conduct.

The appellees cite **1250***676*Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197 (Minn.1986), to support their argument that there is no presumption of access in this proceeding. Their reliance on *Schumacher,* however, is misplaced; that case does not support the broad proposition that a court may seal an *entire* court file involving the settlement of a minor's litigation. In *Schumacher,* which involved wrongful death suits against an airline after a plane crash, the trial court sealed the court files after the litigants reached stipulated settlements. *Schumacher,* 392 N.W.2d at 200. Statutes mandated that the trial court approve the distribution of the settlement funds among the various heirs and approve the settlement figure in one suit involving a minor child. *Schumacher,* 392 N.W.2d at 200 n. 1. The litigants sought the seal to prevent impeding the settlement of other suits involving the same air crash and to protect the families of the deceased crash victims from public intrusion into their private lives. *Schumacher,* 392 N.W.2d at 200. The families believed public access to the settlement distributions could result in thefts, exploitation, trespass, and physical injury to them. *Schumacher,* 392 N.W.2d at 200.

*1000 Thereafter, the trial court denied the media's request for access to the files, and the media appealed. *Schumacher,* 392 N.W.2d at 201. However, while the appeal was pending, the trial court amended the original order, which sealed *entire* court files, to seal *only* the settlement and distribution papers and the transcripts of the settlement hearings. *Schumacher,* 392 N.W.2d at 201 n. 3. The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                                    Page 14
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
**(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)**

rest of the files were opened to the public. *Schumacher,* 392 N.W.2d at 201 n. 3. Thus, the state supreme court reviewed (and affirmed) only the narrow issue of restricting access to the settlement documents or transcripts contained in the court files. *Schumacher,* 392 N.W.2d at 203. The state supreme court's decision to overlook the jurisdictional irregularity of the trial court's late order unsealing the court files (*Schumacher,* 392 N.W.2d at 201 n. 3) actually undermines the assertions of appellees here that there is no presumption of access to the court files in the instant proceeding.

Certain appellees also argue that they have a significant vested interest in the privacy of the information already filed based on the trial court's protective order. They cite *Grove Fresh Distributors, Inc. v. John Labatt Ltd.,* 888 F.Supp. 1427, 1432 (N.D.Ill.1995), for the proposition that the trial court refused to unseal documents because parties may have relied on the existence of the seal in filing certain material. *Grove Fresh Distributors, Inc.,* however, does not support the proposition asserted by appellees. Rather, the trial judge recounted how, on appeal of his 1992 refusal to unseal documents based on the parties' reliance on a protective order, the appellate court remanded the matter to him in 1994 to elaborate for the record his rationale for the seal. *Grove Fresh Distributors, Inc.,* 888 F.Supp. at 1432-33. The trial court then engaged in a document-by-document review of all the sealed materials and, in 1995, ordered the file unsealed. *Grove Fresh Distributors, Inc.,* 888 F.Supp. at 1435. However, the trial court's *in camera* inspection revealed that continued confidentiality for some materials was appropriate, so the court ordered particularized redactions of certain words, phrases and names, while allowing public access to most of the documents. *Grove Fresh Distributors, Inc.,* 888 F.Supp. at 1435.

### 4. Rebutting the Presumption of Access

Having concluded that the presumption of access applies to this proceeding, we next weigh the public interest underlying that presumption against appellees' interest in confidentiality. Appellees have identified several factors on its side of the **1251 ***677 balance: (1) harm to minor children if media attention is cast on their financial situation; (2) harm to the parties and their business interests if sensitive *1001 financial, trade, and business information is disclosed; (3) that unsealing the court file will jeopardize the Family Agreement and undermine the public policy favoring such agreements; and (4) that unsealing the record may have a chilling effect on the court's ability to review the most complete record possible if the trustees and parents limit the evidence they present to avoid compromising other interests by disclosure. As discussed above, these concerns may warrant the sealing of particular documents, but they do not justify the extreme action of sealing entire court files where not every document therein implicates these concerns.

[25] The gist of appellees' arguments to maintain the seal of the court files centers on the desirability to prevent the disclosure of the details of the Family Agreement, a document apparently supplied to the trial court at some point but not contained in this record on review. Consequently, we cannot assess on review whether sealing the Family Agreement, or other similar documents and reports, would serve to protect the interests identified by the appellees.

[26][27] Courts do consider the issue of public access to a document or class of documents separate and apart from public access to the court proceeding. In order to find that a document is subject to a first amendment right of access, the court must consider whether the document has historically been available to the public and whether public access would promote the proper functioning of the government agency producing or considering the document. Settlement agreements have not generally been available to the public and disclosure of the details of settlement agreements would not likely serve to help the trial court in making its best in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

terests determination. See *Schumacher,* 392 N.W.2d at 205-06. An analysis under the common law right of access is somewhat different. If the Family Agreement is in the trial court's possession, the common law presumption of access attaches to this document. However, the court should carefully examine the agreement *in camera* in order to determine whether public disclosure of the material might result in it becoming a vehicle for improper purposes. Even then, however, the court should limit sealing orders to particular documents or portions thereof which are directly relevant to the legitimate interest in confidentiality.

We recognize that the public's particularized interest in the details contained within a settlement agreement is of a different order than the public's general interest in monitoring a court's ultimate determination that a settlement would be in a minor's best interest. The latter interest in the functioning of the trial court would ordinarily be insufficient to justify disclosure of legitimate confidential material; the public generally must be satisfied with the information disclosed *1002 during open court hearings, in the open pleadings in the record, and in the court's public decision. However, we do not undertake to decide whether particular documents in the instant case should be maintained under seal. The determination regarding sealing a particular document (like a private settlement agreement involving minors) is properly left to the trial court in the first instance. This case will be remanded for that purpose. We emphasize that the circuit court record will be returned in its sealed condition so that the trial court may decide the most expeditious procedure to determine whether certain **1252 ***678 documents should be sealed or portions thereof redacted.

### 5. Vacating the Seal

[28] In this case, vacating the seal presents the trial court with a peculiar set of problems. In reliance on the seal, the parties may have filed documents that otherwise would not be part of the public record.

Where there are legitimate concerns of confidentiality, the burden should shift to the parties to itemize for the court's approval which documents have been introduced into the public court record. See *Grove Fresh Distributors, Inc.,* 24 F.3d 893 at 898.

[29][30] *In camera* review is an appropriate procedure and is routinely used when a judicial decision concerns information claimed to be covered by some rule of confidentiality or privilege. The procedure consists generally of two parts. First, the parties present a general outline of their respective positions supported by nonconfidential or nonprivileged evidence. Then, the parties identify the specific confidential or privileged evidence for *in camera* review. Courts are authorized to receive the contested data under seal, to review it privately, to decide the extent and nature of any lawful disclosure, and to tell the disappointed party that the claim of confidentiality has been sustained in whole or part, as the case may be. The court then preserves the *in camera* record for later appellate review.

We return the circuit court record to the trial court in its sealed condition so that the trial court may determine the most expeditious procedure for identifying and sealing particular documents.

### 6. The Identity of the Parties

[31][32][33] The petitioners, adult intervenors, and minor beneficiaries are identified by name in the body of the petition for declaratory relief, but they have proceeded in this matter under designation by initials. The privilege of suing or defending under pseudonyms should not be assumed or granted automatically even if an opposing party does not object. The use of pseudonyms is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in *1003 courts. 735 ILCS 5/2-401(e) (West 2002) ("Upon application and for good cause shown the parties may appear under fictitious names"). Section 2-401 of the Code of Civil Procedure, in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

821 N.E.2d 1238                                                                                                    Page 16
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241
(Cite as: 354 Ill.App.3d 989, 821 N.E.2d 1238)

providing that a " party shall set forth in the body of his or her pleading the names of all parties for and against whom relief is sought," represents the principle that civil judicial proceedings are to be conducted in public. 735 ILCS 5/2-401(c) (West 2002). Identifying the parties to a proceeding is an important dimension of publicness; the public has a right to know who is utilizing the courts that its tax dollars support. *Coe v. County of Cook,* 162 F.3d 491, 498 (7th Cir.1998); *Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (7th Cir.1997). There are exceptions; fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses.

In discussing the option of redacting the minors' names instead of sealing the court files, the trial court concluded that redaction would not protect them because their identities would still be ascertainable, but failed to state why that would be so. Perhaps their status as contingent trust beneficiaries would result in disclosure if the identities of their parents, the adult beneficiaries, were disclosed. We will not, however, speculate on possible arguments or unstated findings the trial court could have relied upon to support its sealing order. See **1253***679*Skolnick,* 191 Ill.2d at 237, 246 Ill.Dec. 324, 730 N.E.2d 4. In any event, redacting the names of the adult and minor beneficiaries could serve to protect the minors' privacy interests without resorting to the overly broad measure of sealing entire documents or concealing the identities of other adult parties. On remand, the trial court may determine that protection of the minor and unborn beneficiaries may warrant the use of initials or pseudonyms by the minor and adult beneficiaries.

### III. CONCLUSION

We hold that the trial court abused its discretion by sealing the entire court files. We reverse the orders of the trial court sealing the court files and remand this cause and return the sealed circuit court record for proceedings consistent with this opinion.

Reversed and remanded with directions.

McNULTY and FROSSARD, JJ., concur.
Ill.App. 1 Dist.,2004.
A.P. v. M.E.E.
354 Ill.App.3d 989, 821 N.E.2d 1238, 290 Ill.Dec. 664, 33 Media L. Rep. 1231, 33 Media L. Rep. 1241

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

655 N.E.2d 888                                                                                    Page 1
166 Ill.2d 507, 655 N.E.2d 888, 211 Ill.Dec. 505
**(Cite as: 166 Ill.2d 507, 655 N.E.2d 888)**

▷
Bogseth v. Emanuel
Ill.,1995.

Supreme Court of Illinois.
Rosalie BOGSETH, as Next Friend of Larry Bog-
seth, Jr., a Minor, Appellee,
v.
Dr. B. EMANUEL et al., Appellants.
Timothy NEUFVILLE, Appellant,
v.
Merle DIAMOND, M.D., et al. (Merle Diamond,
M.D., Appellee).
**Nos. 77280, 77855.**

June 22, 1995.
Rehearing Denied Oct. 2, 1995.

Parties initially named as respondents-in-discovery
in medical malpractice action in which sole defend-
ant was fictitious "John Doe" appealed from order
entered in the Cook County Circuit Court denying
their motion to dismiss after they were converted to
defendants. The Appellate Court, 261 Ill.App.3d
685, 199 Ill.Dec. 108, 633 N.E.2d 904, affirmed,
and further review was sought. In separate malprac-
tice action also involving "John Doe" defendant,
plaintiff appealed from judgment entered in the
Cook County Circuit Court, Joseph N. Casciato, J.,
dismissing action after respondents in discovery
were converted to defendants. The Appellate Court,
267 Ill.App.3d 1002, 202 Ill.Dec. 815, 638 N.E.2d
683, affirmed, and further review was sought. Upon
consolidation of cases, the Supreme Court, Heiple,
J., held that: (1) fictitious "John Doe" may not be
considered "named defendant" under respondent-
in-discovery statute, but (2) such ruling would be
applied prospectively only.

Affirmed in part, reversed in part and remanded
with directions.

Miller, J., concurred in part, dissented in part, and
filed opinion.

West Headnotes

**[1] Parties 287 ☜73**

287 Parties
   287V Designation and Description
      287k72 Unknown Parties
         287k73 k. Designation by Fictitious
Names. Most Cited Cases
Fictitious "John Doe" may not be considered
"named defendant" under respondent-in-discovery
statute, and plaintiff who has sued only fictitious
defendants may not designate respondents in dis-
covery or convert such named parties to defendants;
statutory phrase allowing plaintiff to designate re-
spondents in discovery "other than the named de-
fendants" presupposes that plaintiff has commenced
action against identifiable, real person or entity.
S.H.A. 735 ILCS 5/2-402.

**[2] Statutes 361 ☜181(1)**

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k180 Intention of Legislature
            361k181 In General
               361k181(1) k. In General. Most
Cited Cases

**Statutes 361 ☜188**

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k187 Meaning of Language
            361k188 k. In General. Most Cited Cases

**Statutes 361 ☜214**

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k213 Extrinsic Aids to Construction

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



655 N.E.2d 888
166 Ill.2d 507, 655 N.E.2d 888, 211 Ill.Dec. 505
**(Cite as: 166 Ill.2d 507, 655 N.E.2d 888)**

Page 2

361k214 k. In General. Most Cited Cases
While primary rule of statutory construction is to ascertain and effectuate legislature's intent, language of statute is considered primary source from which to infer such intent; if language of statute is clear, court should give effect to it and not look to extrinsic aids for construction.

**[3] Parties 287 ☞73**

287 Parties
　287V Designation and Description
　　287k72 Unknown Parties
　　　287k73 k. Designation by Fictitious Names. Most Cited Cases
Statute can confer jurisdiction to use unknown or fictitious person; however, because they are in derogation of common law, statutes authorizing filing suits against fictitious entities must do so explicitly, through language of statute and not through legislative debate over statute.

**[4] Courts 106 ☞100(1)**

106 Courts
　106II Establishment, Organization, and Procedure
　　106II(H) Effect of Reversal or Overruling
　　　106k100 In General
　　　　106k100(1) k. In General; Retroactive or Prospective Operation. Most Cited Cases
State Supreme Court's ruling that fictitious "John Doe" may not be considered "named defendant" under respondent-in-discovery statute would be applied prospectively to all cases in which notice of appeal was filed or due to be filed on or after ruling was first announced (June 22, 1995). S.H.A. 735 ILCS 5/2-402.

**[5] Courts 106 ☞100(1)**

106 Courts
　106II Establishment, Organization, and Procedure
　　106II(H) Effect of Reversal or Overruling

　　　106k100 In General
　　　　106k100(1) k. In General; Retroactive or Prospective Operation. Most Cited Cases
Whether ruling will be applied prospectively will depend upon whether decision to be applied nonretroactively establishes new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding issue of first impression whose resolution was not clearly foreshadowed; if either criteria is met, question of prospective or retroactive application will be answered by considering whether, given purpose and prior history of rule, its operation will be retarded or promoted by prospective or retroactive application and whether prospective application is mandated by balance of equities.

**\*\*889\*508\*\*\*506** Mark C. Fedota and Timothy J. Mahoney, of Brinton & Fedota, Chicago, for appellants B. Emanuel and R. Nachman.
Lawrence M. Lulich, of Aries & Purmal, Chicago, for appellants Edgewater Medical Center and M. Simken.
**\*509** William J. Sneckenberg, Chicago, and Marshall P. Whalley, Merrillville, IN, for appellee in No. 77280.
Saul J. Morse and Robert John Kane, Springfield, for amicus curiae Illinois State Medical Society.
Stephen I. Lane, of Lane & Lane, Chicago, for appellant in No. 77855.
Wildman, Harrold, Allen & Dixon, Chicago (Kathy P. Fox and James G. Bonebrake, of counsel), for appellee in No. 77855.
David A. Decker, Dennis A. Rendleman and Athena T. Taite, Springfield, for amicus **\*\*890 \*\*\*507** curiae Illinois State Bar Association in No. 77855.
James T. Newman, Chicago, for amicus curiae Illinois Trial Lawyers Association in No. 77855.

Justice HEIPLE delivered the opinion of the court:
In these consolidated appeals, we are asked to determine whether a fictitious "John Doe" may properly be considered a "named defendant" under section 2-402 of the Code of Civil Procedure (735 ILCS 5/2-402 (West 1992)), the respondent in dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

655 N.E.2d 888
166 Ill.2d 507, 655 N.E.2d 888, 211 Ill.Dec. 505
**(Cite as: 166 Ill.2d 507, 655 N.E.2d 888)**

covery statute.

## *510 BACKGROUND

### No. 77280

Rosalie Bogseth, on behalf of her minor son, Joseph A. Bogseth, filed a complaint naming as the sole defendant a fictitious individual called "John Doe" and 28 other parties as respondents in discovery. The complaint alleged that, after Joseph's birth, he suffered respiratory distress which the respondents in discovery cared for or should have cared for, and that, as a result of the respiratory distress, Joseph suffered permanent neurological problems. After conducting discovery, plaintiff sought to convert four respondents in discovery to defendants. These respondents then filed a motion to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1992)), contending that the original complaint was a nullity, because it only named a "John Doe" defendant. Following oral argument, the trial judge, Judge Casciato, denied the respondents' motion to dismiss.

In *Bogseth v. Emanuel* (1994), 261 Ill.App.3d 685, 199 Ill.Dec. 108, 633 N.E.2d 904, the first district of the appellate court, sixth division, affirmed the trial court's denial of the motion to dismiss. It found that nothing in the statute's language precluded an action against a fictitious defendant. After examining the legislative history of section 2-402, the *Bogseth* court concluded that the legislature intended to permit plaintiffs, at least in some circumstances, to name a "John Doe" defendant. *Bogseth,* 261 Ill.App.3d at 691, 199 Ill.Dec. 108, 633 N.E.2d 904.

Timothy Neufville filed a complaint naming as the sole defendant "John Doe, M.D.," and Merle Diamond, M.D., and St. Francis Hospital as respondents in discovery. The complaint alleged that he was injured through the negligent treatment of his back pain and paresthesia. Within the six-month time period allotted *511 by section 2-402, Neufville converted Dr. Diamond and St. Francis Hospital from their status as respondents in discovery to defendants. After they were converted, Dr. Diamond and St. Francis Hospital moved to dismiss the action pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1992)), asserting that the trial court never entertained subject matter jurisdiction over the cause because, in bringing the action against "John Doe, M.D.," Neufville did not comply with section 2-402. The trial court judge, Judge Casciato, dismissed the action.

In *Neufville v. Diamond* (1994), 267 Ill.App.3d 1002, 202 Ill.Dec. 815, 638 N.E.2d 683, the first district of the appellate court, fifth division, concluded that the trial court properly dismissed plaintiff's action for lack of subject matter jurisdiction because plaintiff failed to name a real party in interest. The *Neufville* court rejected the *Bogseth* court's analysis, concluding that *Bogseth* "misstates the law." *Neufville,* 267 Ill.App.3d at 1007, 202 Ill.Dec. 815, 638 N.E.2d 683.

This court granted leave to appeal in No. 77280 (145 Ill.2d R. 315(a)), received a certificate of importance in No. 77855 (134 Ill.2d R. 316), and consolidated them for purposes of this opinion.

## ANALYSIS

[1] Section 2-402 provides, in pertinent part:
"§ 2-402. Respondents in discovery. The plaintiff in any civil action may designate as respondents in discovery in his or her pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who **891 ***508 should properly be named as additional defendants in the action.
Persons or entities so named as respondents in discovery shall be required to respond to discovery by the plaintiff in the same manner as are defendants

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

655 N.E.2d 888
166 Ill.2d 507, 655 N.E.2d 888, 211 Ill.Dec. 505
(Cite as: 166 Ill.2d 507, 655 N.E.2d 888)

Page 4

and may, on motion of the plaintiff, be added as defendants if the *512 evidence discloses the existence of probable cause for such action.

\* \* \* \* \* \*

A person or entity named as a respondent in discovery in any civil action may be made a defendant in the same action at any time within 6 months after being named as a respondent in discovery, even though the time during which an action may otherwise be initiated against him or her may have expired during such 6 month period." (735 ILCS 5/2-402 (West 1992).)

Plaintiffs contend that "named defendant" is ambiguous, and since the statute is silent regarding whether a plaintiff may name a "John Doe" defendant, this court must, in analyzing the statute, consider the legislative history and underlying purpose of the legislation.

To support their position, plaintiffs note the following exchange which took place during legislative debate over the bill:
"Leinenweber: 'Representative Beaupre, would it be possible to file a John Doe lawsuit and proceed without having to name any doctor or a medical care provider at all under this Amendment and then proceed for discovery?'
Beaupre: 'I think the way the Amendment is written, that it would.'
Leinenweber: 'I ... Mr. Speaker, very briefly, I would certainly support this Amendment as probably the key Amendment to the entire malpractice package. This ... this Amendment will go a long way for relieving the re ... the possibility that a physician or health care provider would have to name ... have to be named in a lawsuit because of the fact that it would be extremely difficult on the part of the plaintiff to determine the involvement of the particular individual. This, as has been pointed out, would permit discovery proceedings to be taken under oath prior to having to name a person in a lawsuit.' " (Ill.Gen.Assem., House Proceedings, June 10, 1976, at 35.)

This colloquy, contends the plaintiffs, reveals the legislative purpose underlying section 2-402 and the legislature's*513 express intent that "John Doe" lawsuits be pled under the statute.

[2] We cannot accept plaintiffs' construction of the statute, for, in construing section 2-402, we find it unnecessary to examine its legislative history. While it is true that the primary rule of statutory construction is to ascertain and effectuate the legislature's intent, the language of the statute is considered the primary source from which to infer this intent. If the language of the statute is clear, the court should give effect to it and not look to extrinsic aids for construction. (*In re Marriage of Logston* (1984), 103 Ill.2d 266, 277, 82 Ill.Dec. 633, 469 N.E.2d 167.) We agree with the *Neufville* court that the language in section 2-402 is unambiguous: it requires a plaintiff to name a real person or entity as a defendant.

Section 2-402 allows a plaintiff to designate respondents in discovery "other than the named defendants." This phrase presupposes that a plaintiff has commenced an action against an identifiable, real person or entity. If there were any lingering doubt concerning the import of this phrase, one need only look to other language in the statute, where it states that the respondents in discovery may have information relevant to "who should properly be named as additional defendants in the action." Again, the import of this language is clear: it contemplates that a cause of action has been brought against a real person or entity. The statute does not say, for example, "who should properly be named as *a* defendant" in the action.

Plaintiffs argue, however, that there is no justifiable basis for concluding that "named defendant" in section 2-402 necessarily excludes a named, albeit fictional, "John Doe" defendant. We disagree. Illinois courts have historically and uniformly held that suits brought against fictitious parties are void *ab initio*. (See *514**892***509Ohio Millers Mutual Insurance Co. v. Inter-Insurance Exchange of the Illinois Automobile Club* (1937), 367 Ill. 44, 54,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

655 N.E.2d 888
166 Ill.2d 507, 655 N.E.2d 888, 211 Ill.Dec. 505
**(Cite as: 166 Ill.2d 507, 655 N.E.2d 888)**

Page 5

10 N.E.2d 393 (holding that "a proceeding by or against a party by a mere fictitious name will be a nullity").) Underlying this prohibition is the tenet that a court only entertains subject matter jurisdiction over justiciable matters-a matter in controversy between an actual plaintiff and an actual defendant.

[3] A statute can confer jurisdiction to sue an unknown or fictitious person. But because they are in derogation of the common law, those statutes which authorize filing suits against fictitious entities must do so explicitly. (See *Hailey v. Interstate Machinery Co.* (1984), 121 Ill.App.3d 237, 238, 76 Ill.Dec. 709, 459 N.E.2d 346 ("jurisdiction to sue unknown or fictitious persons must be obtained pursuant to some express statute").) Such explicit authority must be established through the language of the statute, not through legislative debate over the statute. Nothing in the language of section 2-402 explicitly authorizes filing suit against fictitious defendants. Thus, since the common law prohibits filing lawsuits against fictitious defendants, and since the statute at issue does not provide clear, affirmative indication that such suits are permissible, we cannot conclude that section 2-402 permits suits to be brought against fictitious persons or entities.

Plaintiffs further argue, however, that this court should not construe a statute in a manner which thwarts the legislative purpose behind a statute. Despite plaintiffs' protestations to the contrary, we feel that our interpretation of section 2-402 fully supports the policies underlying the statute. The legislative history of section 2-402 indicates that its purpose was to provide plaintiffs' attorneys with a means of filing medical malpractice suits without naming everyone in sight as a defendant, for it was believed that the label "defendant" in a medical malpractice suit contributed to the spiraling costs of medical malpractice insurance. See, *515 e.g., Perry v. Rush-Presbyterian-St. Luke's Medical Center* (1988), 178 Ill.App.3d 564, 567-68, 127 Ill.Dec. 565, 533 N.E.2d 437.

Our interpretation of the statute allows plaintiffs to

name as respondents in discovery those persons or entities whose culpability in a medical malpractice action cannot be determined at the time the complaint is filed. However, by disallowing "John Doe" lawsuits, and by requiring that plaintiffs identify at least one real defendant prior to filing their lawsuit, we obligate plaintiffs to diligently investigate their potential claims during the two-year period imposed by the statute of limitations. (See 735 ILCS 5/13-212 (West 1992).) If we were to countenance "John Doe" lawsuits, plaintiffs could, pursuant to section 2-402, obtain a six-month extension of this statutory period simply by filing a complaint against a "John Doe" and a respondent in discovery on the final day of the two-year limitations period.

[4][5] Lastly, plaintiffs contend that this court should apply this ruling prospectively. Plaintiffs cite *Elg v. Whittington* (1987), 119 Ill.2d 344, 116 Ill.Dec. 252, 518 N.E.2d 1232, in support of their position. In *Elg,* this court held that whether a ruling will be applied prospectively will depend upon whether the decision to be applied nonretroactively establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. If either of these criteria is met, the question of prospective or retroactive application will be answered by considering whether, given the purpose and prior history of the rule, its operation will be retarded or promoted by prospective or retroactive application and whether prospective application is mandated by a balance of equities. (*Elg,* 119 Ill.2d at 357, 116 Ill.Dec. 252, 518 N.E.2d 1232.) We agree with the plaintiff that these principles support the prospective application of our decision in this appeal.

*516 The issue presented in this appeal is one of first impression whose resolution was not clearly foreshadowed by prior decisions. No appellate court, prior to the appellate court opinions which formed the basis of the present appeal, had addressed the precise issue before the court-whether

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

655 N.E.2d 888
166 Ill.2d 507, 655 N.E.2d 888, 211 Ill.Dec. 505
**(Cite as: 166 Ill.2d 507, 655 N.E.2d 888)**

Page 6

"John Doe" may properly be considered a named defendant under section 2-402.

**\*\*893 \*\*\*510** In fact, the history of the two cases presently before the court reveals the reasonableness of the theories advanced by both sides in this appeal. The same trial judge, when presented with nearly identical facts and legal issues, concluded in *Bogseth* that section 2-402 allowed the naming of the John Doe defendant but concluded in *Neufville* that the statute disallowed the same. Moreover, when each of these rulings were appealed to the first judicial district, one division of the appellate court concluded, in *Bogseth,* that "John Doe" lawsuits were permissible under section 2-402, while another division, in *Neufville,* concluded that they were not.

Defendants contend, however, that the *Bogseth* court, as well as the plaintiffs in the present appeal, ignored the opinions of the third, fourth, and fifth districts of the appellate court, including *Gonzales v. Pro Ambulance Service* (4th Dist.1991), 219 Ill.App.3d 284, 162 Ill.Dec. 370, 579 N.E.2d 1184,*Armour v. Petersen* (4th Dist.1991), 219 Ill.App.3d 289, 162 Ill.Dec. 374, 579 N.E.2d 1188,*Jacobs v. Abbott Laboratories* (5th Dist.1991), 213 Ill.App.3d 998, 157 Ill.Dec. 767, 572 N.E.2d 1231, and *Guertin v. Guertin* (3d Dist.1990), 204 Ill.App.3d 527, 149 Ill.Dec. 643, 561 N.E.2d 1339, which explicitly held that section 2-402 requires a defendant to be named. We disagree. *Gonzales, Armour, Jacobs,* and *Guertin* merely addressed whether a plaintiff could proceed under section 2-402 without naming *any* defendant; they did not address whether "John Doe" could properly be considered a named defendant under the statute.

We also find that the latter criterion established by *\*517 Elg* will be met by applying the edict prospectively, *i.e.,* prospective application of this decision both promotes the operation of the rule and is mandated by the balance of equities. It is clear that the legislature did not intend for the statute to be used defensively so as to preclude medical mal-

practice plaintiffs from having their day in court; rather, it was intended to be used as the plaintiffs, in good faith, intended to use it here: as an innovative reform to help avoid the stigma, costs, and burdens thrust upon individuals being named defendants to litigation unnecessarily.

Moreover, we note that this decision does not subject defendants to unfair surprise, given that they were aware, upon the filing of the complaint, that they could be named defendants in the action. We believe that prospective application will afford both sides full opportunity to present their respective claims and defenses.

We therefore hold that our decision will apply prospectively to all cases in which the notice of appeal was filed or due to be filed on or after our decision in this case was first announced, June 22, 1995.[FN1]

> FN1. We note that this decision can only apply to those cases filed prior to March 9, 1995. On that date, the General Assembly amended section 2-402 to include the following: "Fictitious defendants may not be named in a complaint in order to designate respondents in discovery." Pub.Act 89-7, eff. March 9, 1995.

Accordingly, we affirm the decision of the appellate court in cause No. 77280, *Bogseth v. Emanuel.* We reverse the judgments of the appellate and circuit courts in cause No. 77855, *Neufville v. Diamond,* and remand to the circuit court with directions to reinstate the cause of action.

*No. 77280-Affirmed.*

*No. 77855-Reversed and remanded with directions.*
**\*518** Justice MILLER, concurring in part and dissenting in part:
I agree with the principal holding in the majority opinion-that at least one actual person or entity must be named a defendant for the respondent in discovery statute, section 2-402 of the Code of Civil Procedure, to apply. (735 ILCS 5/2-402 (West

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1992).) I do not agree, however, with the majority's additional determination to make today's decision purely prospective, so that it will govern only cases in which the notice of appeal is filed on or after the date this opinion is announced. (166 Ill.2d at 517, 211 Ill.Dec. at 510, 655 N.E.2d at 893.) Far from being the type of matter in which purely prospective application of a new rule of law is appropriate, the present decision announces no new **894 ***511 rule of law and thus raises no retroactivity question at all.

The very arguments marshalled by the majority in support of today's interpretation of section 2-402 are also arguments for the retroactive application of today's result. The majority correctly concludes that the legislative intent may be discerned from the clear terms of section 2-402, without resort to interpretive tools or canons of construction, and that the plain language of the statute requires the result reached here. Because the statutory language is clear, I must disagree with the majority's further conclusion that the present holding should be made purely prospective, so that it applies only to appeals brought after the present opinion is filed. The present consolidated cases satisfy none of the criteria mentioned by the majority in its discussion of the retroactivity question. See *Elg v. Whittington* (1987), 119 Ill.2d 344, 357, 116 Ill.Dec. 252, 518 N.E.2d 1232.

Although one early appellate court opinion contained *dicta* supporting the construction urged by the plaintiffs (*Whitley v. Lutheran Hospital* (1979), 73 Ill.App.3d 763, 30 Ill.Dec. 74, 392 N.E.2d 729), later appellate court opinions have made *519 clear that section 2-402 requires the naming of at least one defendant (see *Gonzales v. Pro Ambulance Service* (1991), 219 Ill.App.3d 284, 162 Ill.Dec. 370, 579 N.E.2d 1184; *Armour v. Petersen* (1991), 219 Ill.App.3d 289, 162 Ill.Dec. 374, 579 N.E.2d 1188; *Jacobs v. Abbott Laboratories* (1991), 213 Ill.App.3d 998, 157 Ill.Dec. 767, 572 N.E.2d 1231; *Guertin v. Guertin* (1990), 204 Ill.App.3d 527, 149 Ill.Dec. 643, 561 N.E.2d 1339). Moreover, this

court has long prohibited actions against fictitious parties. (*Ohio Millers Mutual Insurance Co. v. Inter-Insurance Exchange of the Illinois Automobile Club* (1937), 367 Ill. 44, 54, 10 N.E.2d 393.) Accordingly, when *Gonzales, Armour, Jacobs,* and *Guertin* stated that section 2-402 requires the naming of a defendant, those opinions could not have meant, contrary to the majority's view, that a fictitious defendant would suffice. That result was already prohibited by *Ohio Millers Mutual,* and section 2-402 did not expressly authorize it.

In any event, regardless of whether today's result was "foreshadowed" by prior judicial decisions, it was "foreshadowed" by the clear and unambiguous language of the statute. Thus, even in the absence of a prior judicial determination anticipating today's result, we should decline the plaintiffs' invitation to make our decision here purely prospective. Today's construction of section 2-402 is compelled by the language of the statute, which, as the majority concludes, clearly requires this result. Having determined that section 2-402 does not authorize actions against fictitious parties, we should now enforce the terms of the statute-not only in future cases, but in these and other pending cases as well. Courts have no license to ignore valid legislative requirements.

The majority's determination to make today's ruling purely prospective can only invite litigants to find a retroactivity puzzle in every case of statutory construction. We have not previously hesitated to apply new statutory interpretations to existing disputes, however. (See *520Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill.2d 304, 329-30, 138 Ill.Dec. 270, 547 N.E.2d 437; *Rothe v. Maloney Cadillac, Inc.* (1988), 119 Ill.2d 288, 295, 116 Ill.Dec. 207, 518 N.E.2d 1028.) Consistent with our past practice, as well as with the clear terms of section 2-402, I would apply the requirements of that statute to these and other pending cases.

Ill.,1995.
Bogseth v. Emanuel
166 Ill.2d 507, 655 N.E.2d 888, 211 Ill.Dec. 505

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

655 N.E.2d 888
166 Ill.2d 507, 655 N.E.2d 888, 211 Ill.Dec. 505
**(Cite as: 166 Ill.2d 507, 655 N.E.2d 888)**

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.